IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KIRK SZOPINSKI,

                Plaintiff,

v.                                             OPINION and ORDER

LINDSAY WALKER, JOANNA PODOLL,           20-cv-1044-jdp
and DANIELLE NITZ,

                Defendants.

---

Pro se plaintiff Kirk Szopinski contends that staff at Columbia Correctional Institution violated his Eighth Amendment rights by failing to protect him from engaging in self-harm. Defendants move for summary judgment. Dkt. 22. I will assume that the relevant events occurred as Szopinski says they did in his declaration. Dkt. 37. But even under Szopinski's version of events, no reasonable jury could conclude that any defendant believed that a genuine act of self-harm was imminent or that defendants failed to take reasonable measures to protect him from potential self-harm. Accordingly, I will grant defendants' motion for summary judgment.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

In May 2020, plaintiff Kirk Szopinski was incarcerated at Columbia Correctional Institution, where defendant Joanna Podoll was a sergeant, Lindsay Walker was a corrections unit supervisor, and Danielle Nitz was a correctional officer. Szopinski has a history of mental illness, including self-harming behavior. Podoll was aware that Szopinski had engaged in self-harm in the past by swallowing a toothbrush. Walker was aware that Szopinski had made

threats of self-harm since being incarcerated at Columbia. (Szopinski says that a psychologist told Walker about Szopinski's lengthy history of self-harming behavior, but he presents no evidence to support this assertion.) Based on their interactions with him, Podoll and Walker thought that Szopinski frequently made threats of self-harm or demanded to be placed on observation status as a means to manipulate staff, control his placement, or to obtain extra benefits, such as additional showers. (Szopinski disputes the reasons for his threats and acts of self harm, which he says are caused by severe mentally illness.)

On May 27, 2020, at approximately 11:30 a.m., Szopinski told Podoll that he wanted to talk to someone from the psychological services unit because he was having thoughts of self-harm and wanted to be placed on observation status. (Placement on observation status is determined by psychological services staff, and it requires that security staff check on inmates every 15 minutes.) Szopinski's cellmate was moving to another cell that day, and Szopinski told Podoll that he was concerned with who would replace his cellmate. Podoll responded that Szopinski should complete a psychological services request if he wanted to speak to psychological services staff.

Approximately one hour later, Podoll was distributing mail on the unit and Szopinski told her again that he was having thoughts of self-harm and wanted to be placed on observation status and referred to psychological services staff. Podoll told Szopinski to submit a psychological services request. Podoll also notified Walker, the unit supervisor, about Szopinski's request to be placed on observation. Walker told Podoll to monitor Szopinski and to ensure that he had access to the psychological services request forms. (Szopinski says that Podoll never gave him a psychological services request form, but he does not deny that he could have obtained one if he wanted to.)

About 15 minutes later, Szopinski exited his cell while his cellmate was moving property out of the cell. Officer Nitz was working in the control bubble of the housing unit, which meant that she was responsible for watching all movements on the unit. Szopinski told Nitz that he was going to hurt himself if he was not placed on observation status. (Szopinski says he also told Nitz that he was going to hurt himself by swallowing his glasses if he went back to his cell. Nitz denies hearing Szopinski say anything about his glasses, states that Szopinski was yelling, and states that it was difficult to hear from inside the control bubble.) Nitz told Szopinski that she would tell Podoll that he had threatened to harm himself and that he wanted to be placed on observation. She also told him that he needed to lock back inside his cell. But Szopinski had closed the cell door, so it was locked from the outside and he could not go back in. Nitz notified Podoll that Szopinski was refusing to lock back in his cell and that he had threatened to harm himself.

A short time later, Podoll arrived at Szopinski's cell and ordered him to lock in his cell. Szopinski held out his hands and asked Podoll to handcuff him, contact a supervisor, and take him to observation. Szopinski says that he told Podoll that if he went back into his cell he was going to break his glasses and swallow them. Podoll responded that Szopinski did not need to be placed on observation status because he was not engaging in self-harming behaviors and because she believed that he was attempting to manipulate staff with his behavior. Podoll then used her radio to call for a supervisor and support staff to assist her with an inmate who was refusing to lock in. Szopinski's cell was then unlocked, and he went back inside. Immediately after he entered, he broke his glasses and ingested the bows. He was taken to the health services unit, and was later transported to the hospital where he had to undergo surgery to remove the eyeglass bows.

3

ANALYSIS

Szopinski contends that defendants violated his Eighth Amendment rights by failing to protect him from harming himself. He argues that defendants should have moved him to observation status and contacted psychological services after he told them that he was having thoughts of self-harm. Prison officials violate the Eighth Amendment if they are aware of an objectively serious risk of harm to an inmate and knowingly or recklessly disregard it. *Farmer v. Brennan*, 511 U.S. 825, 846 (1994). To prevail on his Eighth Amendment claims, Szopinski would need to prove that: (1) at the time he interacted with defendants, there was a strong likelihood that he would seriously harm himself in the near future; (2) defendants knew of that strong likelihood; and (3) defendants consciously failed to take reasonable measures to prevent Szopinski from harming himself. *See Lisle v. Welborn*, 933 F.3d 705, 716–17 (7th Cir. 2019); *See Estate of Clark v. Walker*, 865 F.3d 544, 553 (7th Cir. 2017); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650 (7th Cir. 2012). Defendants contend that Szopinski has not presented evidence to show that they knew of a strong likelihood that he would seriously harm himself or that they failed to take reasonable measures to protect him.

Szopinski initially responded to defendants' motion by filing a motion to dismiss on the ground that defendants failed to follow local rules. Dkt. 32. But the local rules he cited are from the Eastern District of Wisconsin and do not apply in this district, so I will deny his motion to dismiss. Szopinski also submitted an opposition brief, Dkt. 33, and supporting declarations from himself and four other inmates. Dkts. 37–41.

Defendants are correct that Szopinski's evidence is not sufficient to show that they disregarded a known risk to Szopinski safety. The facts of this case are similar to the facts in one of Szopinski's previous cases, in which he sued prison staff for failing to respond to his

4

threats that he would harm himself by swallowing his glasses. *Szopinski v. Koontz*, 832 F. App'x 449 (7th Cir. 2020). The court of appeals affirmed the grant of summary judgment to the defendants because Szopinski had not presented any evidence that the defendants "were aware of his history of mental illness or self-harm, or that they had any other reason to believe that his threats to harm himself were genuine, rather than a manipulative ploy to get placed under observation." *Id.* at 451. In addition, the defendants had other obligations besides responding immediately to Szopinski's threats of self-harm, as one of the defendants was working in the control bubble and the other defendants were attending to the medical needs of another inmate when Szopinski told that them he was going to harm himself. The defendants did not think that Szopinski would harm himself imminently, so their delay in responding to him did not violate the Eighth Amendment. *Id.* at 452. Szopinski's claims against the defendants in this case fail for similar reasons.

There is no question here that Szopinski has a history of self-harm, but that does not require correctional officers to drop everything and accede to Szopinski's demands at any every threat or gesture. Szopinski might well be both mentally ill and manipulative. To succeed on a constitutional claim, Szopinski must show that the accused defendant actually believed that Szopinski was at imminent risk of self-harm. I'll review the evidence against each defendant.

Szopinski has presented no evidence suggesting that Walker believed that Szopinski would seriously harm himself in the near future. Walker never talked to Szopinski on May 27, 2020, and she was told only that Szopinski had threatened to harm himself and wanted to go on observation status. Neither Podoll nor Nitz told Walker that Szopinski had threatened to swallow his glasses. Walker thought Szopinski was attempting to manipulate his cell placement in response to his cellmate being moved, so she directed Podoll to monitor Szopinski and tell

5

him to file a psychological services request. No reasonable jury could conclude that Walker knew about, and disregarded, a substantial threat that Szopinski would harm himself in the near future. *See Wright v. Funk*, 853 F. App'x 22, 24 (7th Cir. 2021) (prisoner's statement to defendants that "he was having suicidal thoughts and would like to speak with someone from the psychological services unit" did not make defendants aware that prisoner faced substantial and imminent risk of self-harm); *Johnson v. Garant*, 786 F. App'x 609, 610 (7th Cir. 2019) (prisoner's statements that "he felt suicidal and wanted to speak to a crisis counselor" were not sufficient to make defendants aware that prisoner faced a substantial and imminent risk of self-harm).

As for defendant Nitz, Szopinski says that he told Nitz that he needed to go on observation status and that he would swallow his glasses if he returned to his cell. Szopinski argues that because he told Nitz that he had a specific plan to harm himself, Nitz was obligated to take steps to prevent him from doing so. But as in Szopinski's previous case discussed above, Szopinski failed to submit any evidence that Nitz was aware of Szopinski's history of mental illness or self-harming behavior, or that she had any reason to think that Szopinski would harm himself imminently. More important, Nitz *did* take steps in response to Szopinski's threats of self-harm. She was assigned to the control bubble and was responsible for monitoring the entire unit, so she contacted Sergeant Podoll, who then came to the unit to talk to Szopinski. Szopinski has no evidence that Nitz deliberately disregarded a substantial threat to his health or safety.

This leaves Podoll, who knew that Szopinski had harmed himself in the past by swallowing a toothbrush. And according to Szopinski's version of events, Podoll also heard Szopinski say that he would harm himself by swallowing his glasses. Szopinski argues that

6

because Podoll both knew that Szopinski had a history of self-harm and a plan to harm himself, she violated his Eighth Amendment rights by failing to call psychological services staff and place him on observation status.

The specific threat makes Szopinski's claim against Podoll arguably stronger than his claims against Walker and Nitz. But Szopinski has failed to submit sufficient evidence from which a jury could conclude that Podoll violated his Eighth Amendment rights. Szopinski submitted no facts about the toothbrush incident, such as what prompted his act of self-harm, whether he had spoken to staff or asked to be placed on observation before he acted, and the extent to which Podoll was involved in the incident, if at all. Podoll's awareness of a single prior self-harm incident is not particularly helpful in evaluating Podoll's response to the incident in this case. One incident of actual self harm by an inmate does not make every future threat a sincere one. So Podoll's knowledge of the toothbrush incident does not show whether she believed that Szopinski's threat to swallow his glasses represented a genuine threat of imminent harm.

To the contrary, undisputed evidence shows that Podoll thought Szopinski's threats of self-harm were insincere, and that he was demanding observation status as a means to avoid being placed with a new cellmate. *See Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006) (defendants not liable under Eighth Amendment if they did not subjectively know of "the significant likelihood that an inmate may imminently" harm himself). Besides asserting that he has a history of mental illness and self-harm, Szopinski does not genuinely dispute whether Podoll thought his threats of self-harm were manipulative and merely a ploy to obtain observation status.

Szopinski argues that even if Podoll thought he was attempting to manipulate his placement or obtain privileges, she still had an obligation to respond to his threats and prevent him from harming himself. However, prison staff are "neither required nor expected to believe everything inmates tell them," *Olson v. Morgan*, 750 F.3d 708, 713 (7th Cir. 2014), and prison staff "who reasonably disbelieves a prisoner's assertion is not liable just because it turns out to have been true." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018). *See also Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) (ignoring "an insincere suicide threat from an inmate wanting nothing more than attention" does not confer liability under the Eighth Amendment). Because Szopinski has not submitted evidence to refute the sincerity or reasonableness of Podoll's beliefs, he cannot prove that she deliberately disregarded a substantial threat to his health or safety.

Viewed in hindsight, perhaps it would have been better for Podoll to confiscate Szopinski's glasses or take other steps to ensure that Szopinski could not act on his threats. But Podoll's decision to order Szopinski to obey orders and return to his cell are not sufficient to prove that she knew of and acted with deliberate indifference to an imminent threat of self-harm. Correctional officers may not ignore known risks to an inmate's safety, but they cannot be expected to guaranty the inmate's safety against all acts of self-harm.

In sum, Szopinski has failed to submit evidence from which a reasonable jury could conclude that defendants failed to protect Szopinski despite knowing that he faced a substantial and imminent risk of engaging in self-harm. Accordingly, defendants are entitled to summary judgment.

ORDER

IT IS ORDERED that:

1. Plaintiff Kirk Szopinski's motion to dismiss, Dkt. 32, is DENIED.

2. The motion for summary judgment filed by defendants Nitz, Joanna Podoll, and Lindsay Walker, Dkt. 22, is GRANTED.

3. The clerk of court is directed to enter judgment for defendants and close this case.

Entered June 7, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge